Filed 7/27/23  P. v. Harris CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>     v.<br><br>IVORY MONTEL HARRIS,<br><br>     Defendant and Appellant. | D080635<br><br>(Super. Ct. No. SCD213652) |


APPEAL from an order of the Superior Court of San Diego County, Laura J. Birkmeyer, Judge.  Reversed.

Theresa Osterman Stevenson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters and Charles C. Ragland, Assistant Attorneys General, Alan L. Amann and A. Natasha Cortina, Deputy Attorneys General for Plaintiff and Respondent.

In 2004, Ivory Montel Harris was a passenger in a vehicle from which someone shot at some victims, killing one.  (See *People v. Harris* (Apr. 22, 2011, D055992) [nonpub. opn.].)  In 2009, a jury convicted Harris of first

degree murder. (Pen Code,[1] § 187, subd. (a).) It found true allegations supporting a firearm enhancement (§ 12022.53, subds. (d), (e)(1))[2],and a gang enhancement (§ 186.22, subd. (b)(1)). The trial court sentenced Harris to 50 years to life in state prison: 25 years to life for the first degree murder conviction and a consecutive 25 years for the firearm enhancement. (*Harris, supra*, D055992.)

In March 2022, Harris petitioned for resentencing under former section 1170.95 (now section 1172.6)[3] based on changes to the felony murder rule and the natural and probable consequences doctrine (Sen. Bill No. 1437 (Stats. 2018, ch. 1015, § 4, eff. Jan. 1, 2019)).

After the court appointed counsel for Harris, it denied the petition, reasoning Harris failed to state a prima facie case for resentencing relief. It concluded that under the jury instructions, the jury could only have convicted him of first degree murder by finding he had the intent to kill.

Harris contends the superior court improperly denied his petition at the prima facie stage instead of holding an evidentiary hearing. We agree and reverse.

---

[1] Undesignated statutory references are to the Penal Code.

[2] Specifically, the jury found true an allegation that Harris was a principal in the offense and "in the commission of the offense at least one principal personally used a firearm; to wit: a handgun, and proximately caused great bodily injury and death to a person (other than an accomplice), within the meaning of [ ] section 12022.53[, subdivisions (d) and (e)]." (Capitalization omitted.)

[3] Effective June 30, 2022, the Legislature renumbered section 1170.95 as section 1172.6, with no substantive change in text. (Stats. 2022, ch. 58, § 10.) We refer to the statute throughout as section 1172.6.

2

FACTUAL AND PROCEDURAL BACKGROUND

*Harris's Conviction*

We set forth the facts from our opinion in *People v. Harris*, *supra*, D055992, in which we addressed a sufficiency of the evidence challenge and affirmed the conviction.

At the time of the murder, Harris was a member of the 5/9 Brims criminal street gang. He had multiple 5/9 Brim tattoos on his body. One of 5/9's rivals is Skyline Piru.

On August 14, 2004, at 9:19 pm, Lee Smith and Alfred Lacy were waiting for a bus in an area claimed by the Skyline Piru gang. Edward Thomas, who was driving a Ford Expedition SUV, stopped at a red light in front of them. Thomas and a passenger "mad-dogged" Smith and Lacy before driving off. Several minutes later, the SUV returned. A passenger climbed through the driver's window and fired a handgun over the roof of the SUV at Smith, Lacy, and their friends. A bullet struck Smith, killing him.

Between 9:25 and 9:30 pm, Thomas drove in his SUV to pick up two girls. When he arrived, the girls saw Robert Myers, Dejon Satterwhite, and Harris in the SUV. Harris was seated in the front passenger seat. The two girls got in and sat in the back seat between Satterwhite and Myers. They saw that Harris, Myers, and Satterwhite were wearing "football like" gloves.

En route to their destination, Harris waved a handgun in Thomas's face, joking around. Someone in the SUV noticed a police car following them. Harris handed the gun to Myers, who put it under his seat after he failed to convince one of the girls to carry it. As the police car followed the SUV, Harris said, "We should bust on them," meaning shoot at the police. He then said, "We're going to jail." Thomas continued to drive.

3

Harris directed Thomas to turn into an apartment complex, and he complied. When the SUV stopped, Satterwhite jumped out and ran away. Police arrested Harris.

At a curbside lineup, Lacy identified Thomas as the shooter and Myers as a passenger in the SUV. He did not identify Harris. Lacy said he did not see the girls in the SUV at the time of the shooting.

Law enforcement recovered a loaded .22-caliber long rifle from the SUV's rear/trunk area and a loaded nine-millimeter handgun from under Myers's seat. They also found live ammunition for both weapons, expended casings, a pair of gloves in the front driver's area and a second pair on the floorboards under the middle row seats. DNA testing of the pair of gloves located in the driver's area showed Harris was a major contributor to the DNA found on each glove. Myers, Thomas, and Satterwhite could not be ruled out as minor contributors to the DNA on the left glove. However, Myers was excluded as a contributor to the right glove.

Gunshot residue was found on Harris, but not on Thomas or Myers. Harris's fingerprints were also recovered from the exterior passenger door frame and the exterior driver's window frame, the same window Lacy described the shooter firing from. Police recorded Harris and Myers's conversation in the rear of a police car. Despite acknowledging that he was likely being recorded, Harris made numerous statements indicating he knew there were guns in the SUV, and repeatedly commented "to the effect that he d[id] not know anything and was not there." (*People v. Harris*, *supra*, D055992.)

In our prior opinion, we pointed out the People had prosecuted Harris on a variety of theories, including that of natural and probable consequences. (*People v. Harris*, *supra*, D055992.) The court instructed the jury on all of

4

those theories: "The prosecution presented multiple theories with respect to Harris's liability for Smith's murder. For example, the prosecutor argued that Harris could be convicted as a direct perpetrator of, or as someone who conspired to commit, or aided and abetted the commission of, either (a) the drive-by shooting or (b) the target crimes of carrying a concealed or loaded weapon on a person or in a vehicle, assault with a firearm or semiautomatic firearm, or discharging or permitting the discharge of a firearm from a car, with murder being a natural and probable consequence of any of these crimes." (*Ibid.*)

On direct appeal, we rejected Harris's principal contention "that the evidence is insufficient to support the jury's implied findings that he was present in the SUV at the time of the shooting, or, even if he was in the SUV, that he was a second shooter, or that he aided and abetted the drive-by shooting or any other offense." We concluded that although the evidence of Harris's participation in Smith's murder was circumstantial, it was nevertheless sufficient to support the jury's verdict. (*People v. Harris,* supra, D055992.)

We also concluded we could affirm the verdict under the different theories presented at trial: "If, as we have determined, one could reasonably conclude that Harris was present in the SUV at the time of the shooting, then the evidence is sufficient to support a further finding that he conspired to commit, or aided and abetted, the drive-by shooting, or, at a minimum, that he aided and abetted the commission of one of the other firearm-related target offenses as to which the jury was instructed, and that the natural and probable consequence of any of those target offenses was a murder." (*People v. Harris,* supra, D055992.) We elected not to address "the theory that Harris was a second shooter because the evidence is sufficient to support the other

5

theories of liability that were presented to the jury. We presume that the jury based its verdict on one of these grounds." (*People v. Harris,* supra, D055992.)

*Harris's Petition for Resentencing*

In 2022, Harris, representing himself, filed a form petition for resentencing under section 1172.6. By checking boxes, he alleged a complaint or information was filed against him that allowed the prosecution to proceed under the theory of felony murder or murder under the natural and probable consequences doctrine, and at trial, he was convicted of first or second degree murder pursuant to the felony murder rule or the natural and probable consequences doctrine. In part, he alleged he "could not now be convicted of [first] degree felony murder because of changes made to . . . [section] 189 . . . for the following reasons . . . [¶] . . . I was not the actual killer. [¶] . . . I did not, with the intent to kill, aid, abet, counsel, command, induce, solicit, request, or assist the actual killer in the commission of murder in the first degree. [¶] . . . I was not a major participant in the felony **or** I did not act with reckless indifference to human life during the course of the crime or felony." The court granted Harris's request for appointed counsel.

In their response, the People argued Harris had not met his prima facie burden of showing he came within the provisions of the resentencing statute because at trial, the court had instructed the jury with CALCRIM No. 521 on the different degrees of murder under section 189. The People argued: "[T]he trial court painstakingly differentiat[ed] between 'murder' and 'first degree murder' so as to avoid a jury mistaking one for the other. When discussing murder stemming from the natural and probable consequences doctrine, it was never described as *first* degree murder. It was always given the generic label of 'murder.' . . . Contrasted with CALCRIM [No.] 416, the only form of

6

murder discussed with uncharged conspiracy and premeditation was 'Premeditated [first] degree murder,' and *not* the generic 'murder' label. The same holds true for CALCRIM [No.] 540B, describing '[first] degree murder' under the alternate theory of discharge from a motor vehicle. [¶] . . . [¶] This is not a case where the court must determine whether a jury reached their verdict using a proper theory or one now discredited by section [1172.6]. The jury was not given the option of using natural and probable consequences or traditional felony murder to find petitioner guilty of first degree murder. On the contrary, the jury was specifically told it was not possible to reach a first degree murder verdict under natural and probable consequences. Having been found guilty of first degree murder, the jury found [Harris] acted with the intent to kill." (Some capitalization omitted.) That instruction also stated the jury was required to find Harris possessed the intent to kill in order to find him guilty of first degree murder. It further specified the theories supporting first degree murder, and concluded, "All other murders are of the second degree." (Some capitalization omitted.)

*The Court's Ruling*

The court stated it had reviewed our prior opinion as well as the parties' moving and opposing papers, jury instructions, the verdict form, the abstract of judgment, and "the [trial] court's record in the case, which include the minute order from September 29th, 2009, which was the sentencing; the minute order from August 3rd, 2009, which was the jury verdict; [and] the court clerk's minutes for the trial from August 3rd."

The court denied Harris's petition: "Review of the verdict form and the jury instructions given at trial clearly show that among the multiple theories of liability for murder used by the people at trial, only two paths were provided in order for the jury to find [Harris] guilty of first[ ]degree murder:

7

deliberation and premeditation, and discharge from a vehicle. Review of the applicable jury instructions for both show the jury was instructed that the People were required to prove [Harris] intended to kill at the time of the crime. The jury did not find [Harris] guilty of second[ ]degree murder, for which other theories were offered to arrive at guilt. The jury was not given the option of using natural and probable consequences or traditional felony murder to find petitioner guilty of first degree murder. [¶] Thus, because the jury could have only found [Harris] guilty of first[ ]degree murder by finding that he had the intent to kill, [he] is ineligible for relief." (Some capitalization omitted.)

## DISCUSSION

Harris contends: "Contrary to the superior court's reasoning, CALCRIM No. 521, as given to the jury at trial, did not instruct that the identified theories of premeditation and deliberation and discharge of a firearm from a vehicle were the *exclusive* and only theories under which it could find Harris guilty of first[ ]degree murder. Rather, the jury was instructed that 'the defendant has been prosecuted for first degree murder *under various theories of liability. Two of them are . . .*' premeditation and deliberation and discharge of a firearm from a vehicle. . . . The jury was also instructed it did not need to agree on a theory of first[ ]degree murder. . . . This left room for at least one juror to have concluded Harris' guilt of first[ ]degree murder, based on any one of the other 'various theories' upon which the jury was instructed."

## I. *Applicable Law*

Effective January 1, 2019, Senate Bill No. 1437 significantly limited the scope of the felony-murder rule and eliminated liability for murder under the natural and probable consequences doctrine through two key provisions.

(Stats. 2018, ch. 1015, § 1, subd. (f); see *People v. Strong* (2022) 13 Cal.5th 698, 707-708 (*Strong*).)  First, Senate Bill No. 1437 amended section 189 so that "[d]efendants who were neither actual killers nor acted with the intent to kill can be held liable for murder only if they were 'major participant[s] in the underlying felony and acted with reckless indifference to human life[.]' " (*Strong*, at p. 708, citing § 189, subd. (e)(3).)  Second, it amended section 188 to provide that, when the felony-murder rule does not apply, a principal in the crime of murder can only be convicted if he acted "with malice aforethought," and "[m]alice shall not be imputed to a person based solely on his or her participation in a crime."  (§ 188, subd. (a)(3).)

Senate Bill No. 1437 also established a new procedure to allow defendants who could not have been convicted under the new law to petition the sentencing court to vacate their murder convictions and resentence them on any remaining counts.  (See § 1172.6, subd. (a); *Strong, supra*, 13 Cal.5th at p. 708.)  After receiving a petition containing the required information, "the court must evaluate the petition 'to determine whether the petitioner has made a prima facie case for relief.' " (*Strong*, at p. 708, citing § 1172.6, subd. (c).)  If the defendant does so, the court must issue an order to show cause and hold an evidentiary hearing to determine whether relief should be granted.  (§ 1172.6, subds. (c), (d)(3).)

Effective January 1, 2022, Senate Bill No. 775 (2020-2021 Reg. Sess.) amended section 1172.6 to clarify certain aspects of the law, including that (1) the burden of proof at a resentencing hearing under this section is "on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder" under California law as amended by Senate Bill No. 1437 and (2) "[a] finding that there is substantial evidence to support a conviction for murder . . . is insufficient to prove, beyond a reasonable doubt, that the

9

petitioner is ineligible for resentencing." (§ 1172.6, subd. (d)(3); see also Stats. 2021, ch. 551, § 1, subd. (c).) Senate Bill No. 775 clarified that the trial court's role in a section 1172.6 proceeding is to act as an independent factfinder and determine, in the first instance, whether the petitioner committed murder under the law as amended by Senate Bill No. 1437. (*People v. Clements* (2022) 75 Cal.App.5th 276, 294, 297; see also *People v. Garrison* (2021) 73 Cal.App.5th 735, 745, fn. omitted [the trial court acts as "an independent factfinder, to determine beyond a reasonable doubt whether defendant is guilty of murder under a valid theory of murder"].) Under the amended felony-murder rule, a defendant who was not the actual killer and did not act with the intent to kill can only be liable for murder if he was a major participant in the underlying felony and acted with reckless indifference to human life. (*Strong, supra*, 13 Cal.5th at p. 708, citing § 189, subd. (e)(3).)

The trial court in conducting the prima facie inquiry may properly examine the record of conviction, "allowing the court to distinguish petitions with potential merit from those that are clearly meritless." (*People v. Lewis,* (2021) 11 Cal.5th 952, 971 (*Lewis*).) But its inquiry is limited: " ' "[T]he court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause." ' [Citation.] '[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.' " (*Lewis,* at p. 971; *People v. Harden* (2022) 81 Cal.App.5th 45, 51 (*Harden*).) "In reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' " (*Lewis*, at p. 972;

10

*Harden*, at p. 51 [" '[T]he trial court should not decide unresolved factual issues[ ] that involve credibility determinations or weighing of evidence' "].) "Nevertheless, the court may appropriately deny a petition at the prima facie stage if the petition is ineligible for relief *as a matter of law*." (*Harden,* at p. 52.) " '[I]f the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' " (*Lewis,* at p. 971; *Harden*, at p. 52.)

An appellate opinion is generally part of the record of conviction, and may be considered at the prima facie stage, provided that the court does not engage in factfinding based on the prior opinion. (*Lewis, supra*, 11 Cal.5th at p. 972 ["the probative value of an appellate opinion is case-specific, and 'it is certainly correct that an appellate opinion might not supply all answers' "]; *People v. Langi* (2022) 73 Cal.App.5th 972, 979 ["[A]lthough an appellate opinion affirming a conviction may be considered in determining whether a prima facie showing has been made under section [1172.6], on prima facie review such an opinion may not be conclusive"].) The record of conviction may also include admissible trial evidence (*People v. Blakely* (2014) 225 Cal.App.4th 1042, 1063), the court's instructions to the jurors (*People v. Bascomb* (2020) 55 Cal.App.5th 1077, 1084), and the parties' closing arguments (*People v. White* (2014) 223 Cal.App.4th 512, 525).

A trial court's decision to deny a resentencing petition at the prima facie stage "is appropriate only if the record of conviction demonstrates that 'the petitioner is ineligible for relief as a matter of law.' [Citations.] This is a purely legal conclusion, which we review de novo." (*People v. Ervin* (2021) 72 Cal.App.5th 90, 101.)

Here, the trial court instructed the jury with CALCRIM Nos. 400[4] and 401[5] on direct aiding and abetting liability. These instructions informed the jury that to convict Harris as an aider and abettor, the prosecution had to prove he knew the perpetrator intended to commit a crime, that he intended to aid and abet the perpetrator in committing the crime, and that he in fact did aid and abet the perpetrator in committing the crime.

The court instructed the jury with CALCRIM No. 403 on the natural and probable consequences doctrine in the context of a murder charge. It instructed that for the jury to find Harris guilty of murder, it "may decide whether he is guilty of any of the following crimes: carrying a concealed firearm on the person, carrying a loaded firearm on the person or in a vehicle, assault with a firearm, assault with a semi-automatic firearm or discharging or permitting the discharge of a firearm from a motor vehicle. [¶] To prove

---

4    CALCRIM No. 400 provides: "A person may be guilty of a crime in two ways. One, he or she may have directly committed the crime. I will call that person the perpetrator. Two, he or she may have aided and abetted a perpetrator, who directly committed the crime. A person is guilty of a crime whether he or she committed it personally or aided and abetted the perpetrator who committed it."

5    CALCRIM No. 401 provides: "To prove that the defendant is guilty of a crime based on aiding and abetting that crime, the People must prove that: [¶] 1. The perpetrator committed the crime; [¶] 2. The defendant knew that the perpetrator intended to commit the crime; [¶] 3. Before or during the commission of the crime the defendant intended to aid and abet the perpetrator in committing the crime; [¶] AND [¶] 4. The defendant's words or conduct did, in fact, aid and abet the perpetrator's commission of the crime. [¶] Someone *aids and abets* a crime if he or she knows of the perpetrator's unlawful purpose and he or she specifically intends to, and does in fact, aid, facilitate, promote, encourage or instigate the perpetrator's commission of that crime."

12

that the defendant is guilty of murder, the People must prove that: [¶] l. The defendant is guilty of any of the crimes listed in the first paragraph of this instruction; [¶] 2. During the commission of murder a coparticipant in any of the crimes listed above committed the crime of murder; [¶] AND [¶] 3. Under all of the circumstances, a reasonable person in the defendant's position would have known that the commission of the murder was a *natural and probable consequence* of the commission of any of the crimes listed in the first paragraph. [¶] A *coparticipant* in a crime is the perpetrator or anyone who aided and abetted the perpetrator. It does not include a victim or innocent bystander. [¶] A *natural and probable consequence* is one that a reasonable person would know is likely to happen if nothing unusual intervenes. In deciding whether a consequence is natural and probable, consider all of the circumstances established by the evidence. If the murder was committed for a reason independent of the common plan to commit any of the crimes listed in the first paragraph, then the commission of murder was not a natural and probable consequence of any of the crimes listed in the first paragraph. [¶] To decide whether crime of murder was committed, please refer to the separate instructions that I will give you on those crimes. [¶] The People are also alleging that the defendant originally intended to aid and abet any of the crimes listed in the first paragraph. [¶] The defendant is guilty of murder if you decide that the defendant aided and abetted one of the crimes listed in the first paragraph of this instruction and that murder was the *natural and probable result* of one of these crimes. However, you do not need to agree about which of the crimes listed in the first paragraph the defendant aided and abetted." (Some capitalization omitted; some italics added.)

The court instructed the jury with CALCRIM No. 417 on "liability for coconspirators' acts," which also mentions the theory of natural and probable

13

consequences: "A member of a conspiracy is criminally responsible for the crimes that he or she conspires to commit, no matter which member of the conspiracy commits the crime. [¶] A member of a conspiracy is also criminally responsible for any act of any member of the conspiracy if that act is done to further the conspiracy and that act is a *natural and probable consequence* of the common plan or design of the conspiracy. This rule applies even if the act was not intended as part of the original plan. Under this rule, a defendant who is a member of the conspiracy does not need to be present at the time of the act. [¶] A *natural and probable consequence* is one that a reasonable person would know is likely to happen if nothing unusual intervenes. In deciding *whether a consequence is natural and probable*, consider all of the circumstances established by the evidence. [¶] A member of a conspiracy is not criminally responsible for the act of another member if that act does not further the common plan or is not a *natural and probable consequence* of the common plan. [¶] To prove that the defendant is guilty of the crime charged . . . , the People must prove that: [¶] l. The defendant conspired to commit one of the following crimes[:] carrying a concealed firearm on the person, carrying a loaded firearm, assault with a firearm, assault with a semi-automatic firearm or discharging or permitting the discharge of a firearm from a motor vehicle, [¶] 2. A member of the conspiracy committed murder to further the conspiracy; [¶] AND [¶] Murder was a *natural and probable consequence* of the common plan or design of the crime that the defendant conspired to commit. [¶] The defendant is not responsible for the acts of another person who was not a member of the conspiracy even if the acts of the other person helped accomplish the goal of the conspiracy." (Some capitalization omitted and italics added.)

14

The court also instructed the jury with CALCRIM No. 521 regarding the degrees of murder and two specific theories of first degree murder.[6]

---

[6] CALCRIM No. 521 provides: "If you decide that the defendant has committed murder, you must decide whether it is murder of the first or second degree. [¶] The defendant has been prosecuted for first degree murder under various theories of [ ] liability. Two of them are as follows: (1) the murder was willful, deliberate and premeditated and (2) the murder was committed by the discharge of a firearm from a vehicle. [¶] Each theory of first degree murder has different requirements, and I will instruct you as to both. [¶] You may not find the defendant guilty of first degree murder unless all of you agree that the People have proved that the defendant committed murder. [¶] *Deliberation and Premeditation* [¶] The defendant is guilty of first degree murder if the People have proved that he acted willfully, deliberately, and with premeditation. The defendant acted *willfully* if he intended to kill. The defendant acted *deliberately* if he carefully weighed the considerations for and against his choice and, knowing the consequences, decided to kill. The defendant acted with *premeditation* if he decided to kill before committing the act that caused death. [¶] The length of time the person spends considering whether to kill does not alone determine whether the killing is deliberate and premeditated. The amount of time required for deliberation and premeditation may vary from person to person and according to the circumstances. A decision to kill made rashly, impulsively, or without careful consideration is not deliberate and premeditated. [¶] On the other hand, a cold, calculated decision to kill can be reached quickly. The test is the extent of the reflection, not the length of time. [¶] *Discharge From Vehicle* [¶] The defendant is guilty of first degree murder if the People have proved that the defendant or another perpetrator murdered by shooting a firearm from a motor vehicle. The defendant committed this kind of murder if: [¶] 1. He or another perpetrator shot a firearm from a motor vehicle; [¶] 2. He or another perpetrator intentionally shot at a person who was outside the vehicle; [¶] AND [¶] 3. He intended to kill that person. [¶] . . . [¶] . . . All other murders are of the second degree." (Some capitalization omitted.)

15

It further instructed the jury regarding the intent requirement for first degree murder under the theories of discharging a firearm from a motor vehicle and felony murder.[7]

7     CALCRIM No. 540b is titled "Felony Murder:  First Degree— Coparticipant Allegedly Committed Fatal Act."  It provides:  "The defendant is charged in count one with murder.  One of the theories of criminal liability the prosecution has elected is a theory of felony murder.  [¶]  The defendant may also be guilty of murder, under a theory of felony murder, even if another person did the act that resulted in the death.  I will call the other person the *perpetrator*.  [¶]  To prove that the defendant is guilty of first degree murder under this theory, the People must prove that:  [¶] 1. The defendant committed or attempted to commit or aided and abetted or was a member of a conspiracy to commit the crime *of* discharging a firearm from a motor vehicle intentionally at another person outside the vehicle with the intent to inflict death.  [¶] 2. The defendant intended to commit or intended to aid and abet the perpetrator in committing, or intended that one or more of the members of the conspiracy commit the crime of discharging a firearm from a motor vehicle intentionally at another person outside the vehicle with the intent to inflict death.  [¶] 3. If the defendant did not personally commit or attempt to commit the crime of discharging a firearm from a motor vehicle intentionally at another person outside the vehicle with the intent to inflict death, then a perpetrator, whom the defendant was aiding and abetting or with whom the defendant conspired, personally committed the crime of discharging a firearm from a motor vehicle intentionally at another person outside the vehicle with the intent to inflict death.  [¶] 4. While committing or attempting to commit the crime of discharging a firearm from a motor vehicle intentionally at another person outside the vehicle with the intent to inflict death, the perpetrator did an act that caused the death of another person.  [¶] To decide whether the defendant and the perpetrator committed or attempted to commit discharging a firearm from a motor vehicle, please refer to the separate instructions that I have given you on that crime.  To decide whether the defendant aided and abetted a crime, please refer to the separate instructions that I have given you on aiding and abetting.  To decide whether the defendant was a member of a conspiracy to commit a crime, please refer to the separate instructions that I have given you on conspiracy.  You must apply those instructions when you decide whether the People have proved first degree murder under a theory of felony murder.  [¶]

16

## II. *Analysis*

As stated, Harris averred in his section 1172.6 petition that he was convicted of first degree murder under the felony murder rule or the natural and probable consequences doctrine. At the prima facie stage, the trial court was required to accept that asserted fact as true. (*Lewis, supra,* 11 Cal.5th at p. 971 [analogizing to the inquiry in writ of habeas corpus proceedings, " 'the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause' "].) Further, the record of conviction supports Harris's averments. The trial court's jury instructions referred several times to the natural and probable consequences theory. Additionally, the prosecution argued the natural and probable consequences theory to the jury as one of multiple theories in order to prove Harris's guilt for the crime of murder. This case does not present a clear basis for resolution at the prima facie stage as did another case in which this court stated, "[I]f the record shows that the jury was not instructed on either the natural and probable consequences or felony-murder doctrines, then the petitioner is ineligible for relief as a matter

---

To prove the defendant guilty of the crime of [first] degree murder under a theory of felony murder, the People must prove that: [¶] 1. The defendant or another perpetrator shot a firearm from a motor vehicle, killing Lee Smith [¶] 2. The defendant or another perpetrator intentionally shot at a person who was outside the vehicle; [¶] AND [¶] 3. At the time of the shooting, the defendant intended to kill. [¶] The defendant must have intended to commit *or* aid and abet or been a member of a conspiracy to commit the felony of discharging a firearm from a motor vehicle intentionally at another person outside the vehicle with the intent to inflict death before or at the time of the act causing the death. It is not required that the person killed be the victim/intended victim of the felony." (Some capitalization omitted.)

17

of law." (*Harden, supra*, 81 Cal.App.5th at p. 52.) On this record, the trial court erred by summarily denying Harris's section 1172.6 writ petition at the prima facie stage. Instead, it should have issued an order to show cause and conducted a hearing as provided in section 1172.6.

The People concede the trial court instructed the jury on different theories of culpability, including the doctrine of natural and probable consequences: "The trial court instructed the jury on murder generally and the natural and probable consequences [*sic*] pursuant to CALCRIM No. 520 (murder committed with malice aforethought), CALCRIM No. 403 (natural and probable consequences) and CALCRIM No. 417 (liability for co-conspirator's acts)." They nonetheless argue: "The trial court properly denied [Harris's] petition. The jury instructions given made clear that there was a difference between first and second degree murder and that, regardless of the alternative theories the jury could rely upon in order to find [Harris] guilty of murder, it had to unanimously find that [he] had the intent to kill in order to find him guilty of first degree murder. That finding rendered [Harris] ineligible for relief as a matter of law."

It is possible the jurors did not rely on the natural and probable consequences doctrine and convicted Harris as a direct perpetrator or direct aider and abettor. However, the record before the superior court does not conclusively establish that. (See *People v. Pacheco* (2022) 76 Cal.App.5th 118, 126-127, review granted May 18, 2022, S274102 [superior court erred in summarily denying a petition under section 1172.6 because the trial court instructed the jury on the natural and probable consequences theory and the prosecution argued the natural and probable consequences theory to the jury "as one of multiple theories in order to prove [the defendant's] guilt for the crime of murder"]; *People v. Offley* (2020) 48 Cal.App.5th 588, 599 [reviewing

18

court could not "rule out the possibility that the jury relied on the natural and probable consequences doctrine in convicting" the defendant, where the trial court instructed the jury on the natural and probable consequences theory and the prosecutor argued "the jury could convict [the defendant] on the basis of this instruction"].)

In light of the uncertain basis of the jury's verdict, and given the court's jury instructions and the prosecutor's arguments, the superior court could have referred to counsels' arguments to clarify whether the jury necessarily found intent to kill without relying on the natural and probable consequences theory. "If a jury instruction is ambiguous, we inquire whether there is a reasonable likelihood that the jury misunderstood and misapplied the instruction." (*People v. Smithey* (1999) 20 Cal.4th 936, 963.) We " 'must consider the instructions together as a whole, to determine whether it is reasonably likely a jury would interpret an instruction in a particular way, because we presume jurors understand and correlate all of the instructions' [citation] and the jurors are 'presumed to have followed the court's instructions.' " (*People v. Williams* (2022) 86 Cal.App.5th 1244, 1255-1256.) In particular, we "must consider the arguments of counsel in assessing the probable impact of the instruction on the jury." (*People v. Young* (2005) 34 Cal.4th 1149, 1202.)

Our prior opinion specifically states the prosecutor argued to the jury multiple theories with respect to Harris's culpability for Smith's murder. However, the parties did not submit copies of counsels' closing arguments for the superior court's review, and in the proceedings below, neither the court nor the parties referred to them. On appeal, the parties also fail to reference counsels' closing arguments. On this record, we cannot overcome the presumption of truth given to the petitioner's allegations at the prima facie

19

stage.  (See *People v. Montes* (2021) 71 Cal.App.5th 1001, 1007 [court erred in summarily denying a petition under section 1172.6 in part because "the prosecutor referred to the natural and probable consequences doctrine, provided the jury with examples of what natural and probable consequences could arise . . . , and argued that a reasonable person in [the defendant's] shoes would know that an assault may lead to an attempted murder"]; cf. *People v. Estrada* (2022) 77 Cal.App.5th 941, 948 [" 'when the parties make "no reference to the 'natural and probable consequences' doctrine in their arguments to the jury, it is highly unlikely that the jury [will have] relied upon that rule" ' "].)  We conclude the court erred in denying Harris's petition for relief at the prima facie stage.

## DISPOSITION

The order denying Harris's section 1172.6 petition for resentencing is reversed. The superior court is directed to issue an order to show cause and conduct further proceedings under section 1172.6.


O'ROURKE, J.

WE CONCUR:


McCONNELL, P. J.


HUFFMAN, J.